## ST. LOUIS & S. F. R. R. CO. v. BATEMAN.

No. 15422—Opinion Filed Sept. 29, 1925.

1. **Master and Servant — Liability Under Federal Employers' Liability Act—Instructions on Negligence and Proximate Cause.**

In the trial of a personal injury case under the federal Employers' Liability Act, the jury should be advised in the instructions that before plaintiff is entitled to recover, the jury must find that the defendant's negligent acts complained of were the proximate cause, or such negligent acts concurring with plaintiff's lack of care were the proximate cause; but failure to so advise the jury as to proximate cause will not necessarily work a reversal where the only conclusion to be reached is that the injury resulted from the acts complained of, or such acts concurring with the plaintiff's lack of care, the question of negligence of the one and lack of care of the other having been otherwise properly submitted to the jury.

2. **Same—Damages as Affected by Comparative Negligence.**

Where a personal injury suit is prosecuted under the federal Employers' Liability Act, an instruction to the jury which authorizes the jury to take a comparative view of the negligence of the defendant, if any, with the lack of due care of the plaintiff, if any, and to find the amount of plaintiff's damages, if any sustained, and reduce the amount of plaintiff's damages by the amount of plaintiff's responsibility for the injury found by the jury, is not an incorrect statement of the law; and it is not error to refuse requested instructions which make plaintiff's right of recovery to depend solely upon defendant's negligence.

3. **Trial—Instructions—Refusal of Requests Covered in Charge.**

It is not error for the trial court to refuse to give requested instructions, although a correct declaration of law applicable to the facts and circumstances presented by the evidence, where the point presented by the requested instructions is amply otherwise covered and made plain to the jury in the court's instruction.

4. **Pleading—Petition—Sufficiency.**

Defendant's demurrer to plaintiff's petition, and defendant's objection to the introduction of evidence by plaintiff in support of his petition on the ground that the petition does not state facts sufficient to authorize a recovery, for the purpose of consideration of such demurrer and objection, admit the truth of the allegations and the logical and rational inferences to be drawn therefrom; and both are properly overruled where the allegations and logical and rational inferences to be drawn therefrom will authorize a recovery.

5. **Appeal and Error—Review—Sufficiency of Evidence—Verdict Conclusive.**

Where the plaintiff's petition states a cause of action, and, if true, would authorize a recovery, and plaintiff's evidence reasonably tends to support the allegations of the petition, and reasonably tends to support the verdict and judgment, the verdict and judgment will not be disturbed on appeal because of alleged insufficiency of the evidence.

6. **Appeal and Error—Harmless Error—Nonexpert Evidence.**

Where the defendant's doctor was called as a witness for plaintiff and testified that he found plaintiff unconscious, the testimony of a nonexpert witness to the same effect is merely cumulative and will not necessarily work a reversal because such nonexpert witness was not first required to state acts, conduct, or language of the plaintiff upon which he based his opinion.

7. **Damages—Excessiveness — Personal Injury.**

A verdict for $750 is not excessive for the

injuries sustained as shown by the record.

**8. Judgment Sustained.**

The record held to support the judgment.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Muskogee County; O. H. Searcy, Judge.

Action by J. W. Bateman against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for plaintiff, and de'endant appeals. Affirmed.

W. F. Evans, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiff in error.

Jay A. Anderson and Guy Nelson, for defendant in error.

Opinion by SHACKELFORD, C. The defendant in error was the plaintiff below, and the plaintiff in error was the defendant below. The parties will be referred to herein as plaintiff and defendant as they appeared in the trial court.

Plaintiff by his action sought to recover damages for personal injury alleged to have been sustained by him while in the employ of the defendant. He alleges, in substance, that on or about the 25th day of June, 1922, and in the nighttime, he was rendering service for the defendant upon its property at Muskogee, in coaling one of the defendant's engines; that in rendering such service and while in due care for his own safety, he was standing upon the cab of the engine being coaled, for the purpose of releasing the coal from the container used to carry coal to the tender, and while so engaged, an employe of the defendant, without notice to him, carelessly and negligently permitted or caused a cloud of steam to be emitted from the engine and so enveloped the cab where he was standing that he was unable to see the coal container and in swinging around to be unloaded by him, it struck the plaintiff and knocked him to the ground, a distance of 12 or 15 feet, and he fell head foremost and skinned and bruised himself and hurt his head and neck, and sprained one of his wrists; from all of which he suffered physical pain and mental anguish, and lost time, to his damage in the sum of $2,995, for which he prays judgment. The defendant demurred to the plaintiff's petition, and the demurrer being overruled and exception allowed, defendant answered. The answer is a general denial; plea of assumed risk; and of contributory negligence; and that if plaintiff was injured as claimed by him, it was due to his own negligence and lack of care for his own safety. Plaintiff replied by general denial.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $750. The defendant appeals, and presents its assignments of error under the following propositions:

(1) The court erred in his instructions to the jury. (2) The court erred in refusing to give requested instructions. (3) The court erred in overruling defendant's demurrer to plaintiff's amended petition, and its objection to the introduction of evidence. (4) The verdict of the jury is contrary to and not supported by the evidence. (5) The court erred in admitting incompetent and immaterial evidence. (6) The verdict and judgment are excessive.

At the inception of the trial it was agreed that plaintiff and defendant were engaged in interstate commerce, and that the provisions of the federal Employers' Liability Act should apply and be controlling in the trial.

The defendant complains of instructions given in paragraphs 3 and 9 of the court's instructions. Paragraph 3 is as follows:

"You are further instructed that if you believe from a fair preponderance of the evidence that the plaintiff while engaged in the employ of the defendant as a coal heaver in or near Muskogee, Okla., on or about the 25th day of June, 1922, was upon the cab of an engine of the defendant then being coaled and that while so standing upon said cab and waiting for a bucket of coal to be passed to him by means of a derrick and to be emptied by him in the coal tender, that the hostler, being an employe of the defendant and in charge of the operation of said engine, suddenly and without warning negligently turned on the steam in said engine to operate the dynamo for the purpose of lighting certain lights on the engine and that large and dense volumes of steam arose around and about the plaintiff and around and about the bucket as the same was passed to him and obscured the vision of the plaintiff and said bucket struck plaintiff and injured him, then in that event your verdict should be for the plaintiff unless you further believe that the plaintiff assumed the risk of injury by reason of such steam being so turned on."

It seems that the only issue made as to negligence of defendant was whether or not one of the employes negligently, suddenly, and without warning, turned on the steam from the boiler so that dense volumes of steam came up about the plaintiff on the cab and kept him from seeing the bucket and the bucket struck plaintiff because he could not see to protect himself from it. The complaint made as to this paragraph of the

instructions is that the instruction did not tell the jury that before they could find for plaintiff, they must find that negligently enveloping him with the steam and obscuring his sight was the direct and proximate cause of his injuries. The plaintiff testified to the effect that the steam fogged up around him and some one "hollered" to look out, and he just had time to look but could not see anything and the bucket hit him. The inference is that he could not see anything for the steam. It seems that just previously he had stooped over to arrange a torch which he was under the necessity of using, because without it he was in the dark. One of two conditions, or both together, must have caused the injury. One is that the plaintiff was not in due care for his own safety, or the other is that the steam obscured his sight so that he could not see the bucket coming towards him, or both combined caused the injury to him. The instruction complained of submitted the question of whether the defendant was negligent in permitting the steam to envelop the plaintiff; and since no other thing short of plaintiff's own lack of care, or the combination of the two negligent acts, could have produced the results, it seems that the jury could not very well have been misled by the instruction, because it did not say in so many words that they must find that the cloud of steam was the procuring cause of the injury. It seems that it would have been an incorrect statement of the law to have advised the jury that before they could find for plaintiff, they must find that negligently permitting the steam to escape was the proximate cause, for the reason that it might have been only partly the cause, and still the plaintiff be entitled to recover. In other words, under the federal Employers' Liability Act, if the escaping steam was the result of negligence and that combined with plaintiff's failure to exercise due care for his own safety, taken together, resulted in plaintiff's injury, still the plaintiff is entitled to recover, unless plaintiff had assumed the risk incident to being enveloped in the cloud of steam. When a warning was given, the plaintiff endeavored to see the approaching danger, but could not see on account of the cloud of steam, and the bucket struck him and he was injured. It is apparent that he could not see because of being enveloped in the steam and the jury were authorized to so find, since he was enveloped in the steam and he said he tried to look but could not see because of the cloud of steam. This was the effect of the testimony, and if the steam was negligently permitted to escape, the plaintiff was enti-

tled to recover unless he assumed the risk. The instruction so advised the jury. It is true, perhaps, the declaration of law would have been more nearly technically correct if the jury had been advised that they must find that the escaping steam was the proximate cause or combined with plaintiff's lack of care was the proximate cause. It seems, under the circumstances presented here, the jury must necessarily find that the cloud of steam was a procuring cause, even if not the sole cause of the accident; in either event, the finding should be for plaintiff if the steam was negligently permitted to escape, unless plaintiff had assumed the risk of some employe turning on the steam. We think that the court's instruction No. 3 is not so faulty as to require a reversal of the judgment.

The defendant cites and relies upon Hines, Director General, v. Dean, 96 Okla. 107, 220 Pac. 860. In that case, a crossing accident case, the jury was told that if the defendant's employes failed to give certain statutory signals, the plaintiff would be entitled to recover as a matter of law. The instruction was properly held to be erroneous. It is easy to see how there might have been no causal connection between the failure of defendant's employes to give statutory signals, on an engine being driven by them along the railway, and the injury to plaintiff, upon the crossing. The presence of the track itself was a danger signal. In the instant case, causal connection is apparent from the circumstances. Plaintiff tried to visualize the approaching danger and could not because he was enveloped in a cloud of steam. But still plaintiff was not entitled to recover unless the steam was negligently released, and not then, if he had assumed the risk incident to other employes negligently releasing the steam. Whether the steam was negligently released or whether the plaintiff had assumed the risk incident thereto, were both questions of fact for the jury; and both were submitted in the instruction complained of. We think the case cited and relied upon is not sufficiently in point to be controlling here.

The defendant complains of paragraph 9 of the court's instruction. This instruction authorized the jury to take a comparative view of the negligence of both parties, if they found there was negligence upon the part of both. The jury were to determine the amount of plaintiff's injury, if any; the negligence of plaintiff himself, if any, and the negligence of defendant, if any, and decrease the amount of plaintiff's recovery by the quantum of plaintiff's own lack of care, if the

jury found that plaintiff should recover. This seems to be the true rule under the federal Employers' Liability Act. The instruction complained of is in substantial accord with the case of Kansas City, M. & O. Ry. Co. v. Costa, 69 Okla. 132, 170 Pac. 892, and Seaboard Air Line Ry. Co. v. Tilghman, 237 U. S. 499, 59 L. Ed. 1069. The defendant contends that the instruction is not such as would ordinarily be understood by the average juror, but we think the instruction is not subject to such criticism. The outcome of the case indicates that the jurors very well understood what they were to do under this instruction. The court's instruction No. 9 does not require a reversal of the judgment.

The defendant next complains that the court erred in refusing to give certain requested instructions. The complaint is that the court refused to give the requested instructions Nos. 2, 6, and 7. In instruction No. 2, requested by defendant, plaintiff's right to recover was made to depend upon defendant's negligence, the plaintiff being free from negligence. It seems that this instruction is not a correct statement of the law under the federal Employers' Liability Act, under which the plaintiff is permitted to recover, notwithstanding his negligence, if the defendant was also negligent. It does not permit a comparative view to be taken of the negligence of both parties, nor permit a recovery by plaintiff if he was negligent, even though defendant's negligence contributed to the injury. The same vice is also in paragraph 7 of the requested instructions. These instructions seem to have been prepared and submitted without reference to the effect of the federal Employers' Liability Act. They were not correct statements of the law and it was not error to refuse them. Defendant's requested instruction No. 6 tells the jury that the defendant was not an insurer of the safety of its employees, and it owed the duty to exercise ordinary care only to prevent unusual risks which could not reasonably have been anticipated by the plaintiff. There seems to be no vice in the requested instruction; but the refusal of a correct declaration of law does not necessarily work a reversal of the judgment. The jury was told in the court's instructions that if it was customary for the steam to be turned on while the engine was being coaled, and plaintiff knew of the custom, he assumed the risk, or if plaintiff turned on the steam, or it was turned on by one of the coal heavers at about the time the coaling began, or was turned on with the plaintiff's knowledge and consent, and plain-

tiff had time to extricate himself, if such were necessary, the plaintiff assumed the risk and could not recover. Thus, it seems to us that it must have been clear to the jury under the instructions given, that the defendant was not an insurer of the plaintiff's safety, although they were not told that in so many words. We think the court might well have given defendant's instruction No. 6, but since it was otherwise made plain to the jury that defendant was not an insurer of plaintiff's safety, the refusal to give the requested instruction should not work a reversal of the judgment.

The defendant's third contention is that the court erred in overruling its demurrer to plaintiff's petition and its objection to the introduction of testimony by plaintiff in support of the petition. The demurrer and objection present the same contention. That is, the petition does not allege facts sufficient to authorize a recovery for plaintiff.

The petition alleges, in substance and effect, that he and other employes were engaged in coaling an engine by means of a crane and bucket, in which the coal was being conveyed; that plaintiff was on the cab to dump the coal; that the employe operating the crane would cause the bucket of coal to swing over the cab so the plaintiff could unload it into the tender attached to the engine; that before the bucket was swung over the cab, steam was permitted to escape from the engine in a dense cloud, which enveloped the cab on which the plaintiff was standing to perform his part of the work, and also enveloped the plaintiff, so that he could not see the bucket as it swung over the cab, and it was swung against the plaintiff while so enveloped in the fog of steam, and it knocked him from the cab and he fell to the ground and was injured. While it is not alleged in so many words that the steam was negligently permitted to escape, and that such negligence was the direct and proximate cause or a direct and proximate cause of plaintiff's being knocked off the cab, it seems that a reasonable, logical, and rational inference to be drawn from what is alleged is that at least the enveloping of the cab and plaintiff in the cloud of steam, so as to blind him to the approaching danger, was negligence and a procuring cause of the accident. The demurrer to the petition and objection to the introduction of evidence admitted the truth of the allegations and the logical and rational inferences to be drawn therefrom. We think the demurrer and objection were properly overruled.

The defendant insists that the verdict and

judgment are contrary to and not supported by the evidence. The contention is presented that the evidence did not show any unusual happening as to escaping of the steam, and that plaintiff assumed the risk incident to the escaping of such steam; and also that the evidence adduced did not support the allegations of the petition. The plaintiff had been in the same line of service for some time, and perhaps, as a matter of law, should be held to have assumed the risk ordinarily incident to the character of service he was rendering. The evidence, however, tends to show that something out of the ordinary happened. It seems that ordinarily the lights on the engine were shut off while the engine was being coaled. The lights were operated by a dynamo on the engine and the dynamo was operated by steam from the engine. So it seems that the ordinary course of events was to turn off the dynamo and shut off the lights. When the dynamo was not running the exhaust of steam was not such as to envelop the cab with steam. This was the usual condition under which the plaintiff worked. The evidence tends to show that somebody turned on the dynamo without any warning to plaintiff; and the operation of the dynamo greatly increased the steam exhaust and the steam enveloped the plaintiff and somebody, evidently realizing the danger 'to the plaintiff from the unusual condition produced, "hollered" to plaintiff to "look out," and plaintiff said he looked, but could not see anything, and the bucket hit him. There seems to have been enough in the evidence to create a rational inference of negligence which was a procuring cause and enough to make it a question of fact as to whether the plaintiff had assumed the risk of such unusual condition. The defendant, however, contends that the evidence did not in any wise support the character of negligence alleged in the petition. We cannot agree that such contention is sound. The crane was being operated with compressed air and the air compressor was run with steam made from the boiler of the engine. These things the plaintiff perhaps knew as well as other employes, but he alleges that it was the duty of the hostler to cut off the steam from the exhaust of the engine; and this the hostler failed to do and failed to inform the plaintiff that this had not been done; and further alleges that the steam was permitted to escape from the engine exhaust and envelop him. It seems to us that the gist of plaintiff's allegation is that steam was negligently permitted to escape from the engine exhaust in an unusual and unanticipated way, so it was a matter of little or no consequence whether the hostler negligently failed to cut the steam off from the engine exhaust, or whether he or some other of the employes negligently turned it on after it had been cut off, if in fact it had been cut off. The evidence adduced reasonably supports the conclusion that the steam from the engine exhaust was negligently permitted to escape and became a procuring cause of plaintiff's injury. That being the conclusion we reach, we will not disturb the verdict and judgment because of alleged lack of, or insufficiency of, the evidence.

The defendant contends that the court erred in permitting the plaintiff over its objection to show by a negro witness, an ordinary work hand, that he knew plaintiff before the injury and saw him in the hospital after the injury, and that when he saw him in the hospital, "he was somewhat addled, but he was not like before he was hurt." This does not seem to be so great an infraction of the rule applicable to the testimony of nonexpert witnesses as to require a reversal of the judgment. It seems that in such matters a witness may testify to conduct and appearance of the injured plaintiff, and state his impressions therefrom as to whether he was rational or irrational. This witness had known the plaintiff for some time before the injury and saw him in the hospital afterwards; and plaintiff did not appear to witness to be the same, but appeared to be "addled." Even though the rule of evidence was not strictly applied, it seems that the evidence offered was merely cumulative to the evidence of the company's doctor. The doctor testified that he saw the plaintiff at the hospital and found him unconscious; that "he became conscious that day and then he was kinda cloudy for two or three days and it went that way about six days." The company's doctor and the negro witness each probably meant the same thing. The doctor said "kinda cloudy," and the negro witness said "addled." It is difficult to see that the defendant could have been prejudiced by adding the negro's testimony to what the doctor had already said. If there had been a disagreement between the expert and nonexpert witness as to the condition of the plaintiff, there perhaps might be some significance to be attached to the court's infraction of the rule of evidence in permitting the nonexpert witness to say plaintiff seemed to be "addled," without first being required to testify as to acts and conduct of plaintiff which led him to think

that plaintiff was· "addled." We think there was not such an infraction of the evidence rule as would either require or justify a reversal of the judgment because of such infraction.

The contention is made that the judgment is excessive. We cannot agree to such contention. The plaintiff was knocked from the top of the engine cab by the coal bucket and fell about 12 or 15 feet head foremost, and so struck the ground. He was rendered unconscious by the consequences of the fall. He was carried to the hospital and found to be unconscious the next day and for several days, in a condition described by the company's doctor as "kinda cloudy." His wrist was sprained; his neck and head hurt and bruised. He was in the hospital from Saturday night until Friday morning, and after going home was confined there from the 25th of September to October 13th; and his capacity to earn money was reduced. He tried to hold a job and found it difficult. The jury fixed the amount of his recovery at $750. It seems that the amount of recovery was rather modest for the injury sustained. From a study of the record it appears that the jury must have regarded the plaintiff as somewhat to blame; and understood and applied the rule fixed under the federal Employers' Liability Act, and reduced the amount of actual damages sustained by the amount of the ·plaintiff's responsibility for the accident. Otherwise the amount of recovery perhaps would have been greater.

We find no error requiring a reversal of the judgment, and therefore recommend · that the judgment be affirmed.

By the Court: It is so ordered. ·

Note.—See under (1) 4 C. J. p. 1032, § 3014; ; 26 Cyc. p. 1502 (Anno). (2) 26 Cyc. p. 1513 (Anno). (3) 38 Cyc. p. 1711. (4) 31 Cyc. pp. 333, 336, 761. (5) 4 C. J. p. 853. § 2834. (6) 4 C. J. pp. 975, § 2955, 997, § 2980. (7) 17 C. J. p. 1095, § 409. (8) 4 C. J. p. 1129 § 3122.