## MANEY et al. v. DUGGER.

No. 17855. Opinion Filed Dec. 18, 1928.

On Rehearing Sept. 24, 1929.

Elmer L. Fulton, for plaintiffs in error.

Suits & Hall, for defendant in error.

LEACH, C. This is an appeal by J. W. Maney and others, who were defendants in the trial court, from a judgment rendered against them in the district court of Oklahoma county in favor of H. A. Dugger, who

was plaintiff below. The parties will be referred to herein as they appeared in the trial court.

Plaintiff's petition, upon which the cause was tried, stated, in substance, that: On September 1, 1921, plaintiff was employed by defendants as a subcontractor on sections C and D, Oklahoma FAP No. 39, Carter county, in the construction of a gravel surfaced highway; that plaintiff, as such subcontractor, employed men and teams to aid in the construction of said road; that defendants agreed to pay plaintiff for the labor of the men and teams so employed, and for materials furnished; that the terms and conditions of payment are set forth in a contract dated September 1, 1921, and supplemental agreements November 3, 1921, and July 12, 1922, as shown by copies attached to petition.

The September contract designated Maney Brothers & Company, the defendants, as the contractor, and Dugger as subcontractor, and recited that the contractor had previously entered into contracts with the state of Oklahoma for the construction of sections A, B, C, and D, of Oklahoma, FAP, 39. The subcontractor agreed, as recited in the contract, to furnish all materials, labor, and equipment necessary for the construction of the gravel surface of the roadbed of sections C and D at certain named unit prices, such material and performance of the work to be acceptable to the State Engineer, and in compliance with and subject to the conditions, plans, and specifications of the contract between the contractor and the state, and to accept engineer's estimates as a basis on partial and final payments, such partial payments to the subcontractor to be made by the contractor out of and within five days after receipt of partial payments to him by the state. Contract further provided that the subcontractor should place on the work a sufficient amount of equipment and labor to perform the work at a degree of progress satisfactory to the contractor and engineer, and that upon failure so to do, the contractor, upon five days' notice, should have the right to place on the work such additional equipment and labor as he might deem necessary, the cost thereof to be paid by the subcontractor, and if he fail or refuse to pay such cost, the contractor may pay the same and deduct the amount from any money due the subcontractor.

The supplemental agreements referred to did not materially change the general conditions of the contracts, and apparently were necessary by reason of a change in the contract by the state and contractor, and by reason of relocation of gravel pits from which material was obtained.

Following the reference to the contract in the petition, it was further alleged that plaintiff commenced work for the defendants under the contract; that there is still due him for labor and material performed and furnished under the contract, as shown by estimates submitted from time to time by the engineer in charge and as shown by the financial statement furnished by defendant to plaintiff, the sum of $8,528.33; that the items going to make up the unpaid balance upon said contract are as follows: (thereafter follows in paragraphs 4 to 14 of the petition the allegation that defendants claim to have paid out various sums for labor, material, trucks and steam-roller hire, describing the items and amount, and charged the same to the account of the plaintiff or deducted them from the amount due plaintiff without authority from him, and that the same were not proper charges under the contract, and for which plaintiff was under no legal obligation to pay; that by reason thereof defendants were indebted to plaintiff in the sums stated). Paragraphs 15 and 16 of petition refer to two certain items or sums claimed to be due under the contract for gravel which sums were not allowed, or were deducted from the amount claimed to be due plaintiff.

Paragraphs 17 and 18 of the petition refer to certain items or sums held or deducted by defendants, which plaintiff alleges to be due him as a balance on estimates and for work and labor performed and material furnished as shown by the statement of account of defendants dated November 22, 1922. In paragraph 19, it is alleged that plaintiff has performed all the conditions precedent upon his part, but that defendants have neglected to perform their said contract in the particulars charged, by reason whereof they were indebted to plaintiff in the sum and amount as stated in paragraph 3 of the petition; and prayed judgment therefor.

Defendants filed their answer to plaintiff's petition, wherein they generally denied plaintiff's allegations, but admitted that plaintiff performed certain labor as a subcontractor of defendants pursuant to the terms and conditions of the contracts set out in plaintiff's petition; further alleged that plaintiff failed, neglected, and refused to place and maintain upon the work a sufficient amount of equipment and labor to perform the work at a degree or progress satisfactory to the

defendants and the engineer in charge; that defendants served upon plaintiff written notice that, in the opinion of the contractor, the plaintiff was not maintaining on the work sufficient material and labor; that the progress of the work was unsatisfactory to defendants, and that they would, as provided by the contract, place such additional equipment and laborers on the work as they deemed neecssary, and that defendants furnished additional equipment and laborers upon said work after plaintiff failed and neglected to do so, that such additional equipment and laborers were necessary, proper, and essential, and that the amounts expended therefor by the defendants were reasonable, correct, and just.

As to paragraph 4 of plaintiff's petition, defendants deny that they have any knowledge of the item referred to and the charge thereof against the account of plaintiff. As to paragraphs 5 to 14, inclusive, of plaintiff's petition, and the items therein mentioned, defendants admit having paid out the amounts and sums as alleged by plaintiff, and stated that plaintiff was obligated to perform the labor, or furnish the material for which the amount was paid out by defendants, and that the charges were necessary, essential, reasonable, and authorized by the terms of the contract between the parties, and specifically denied liability to plaintiff for the various amounts.

As to paragraph 15, defendants admit the execution of the supplemental agreement referred to therein, but specifically denied that defendants are liable for the extra haul and amount therein alleged to be due.

Defendants specifically denied the allegations of paragraphs 16 to 19 of plaintiff's petition, and further denied that they were indebted to the plaintiff for labor and materials in the amount and sum as alleged by plaintiff, but admitted that they are indebted to plaintiff for labor and material performed and furnished under the contracts in the sum and amount of $2,486.88. as shown by a verified, attached, itemized statement of account of the labor performed and materials furnished by plaintiff and the sums and amounts thereby earned by plaintiff; also the sum and amounts paid to and charged against plaintiff.

To the answer of defendants, the plaintiff filed a reply, admitting the receipt of the notice referred to in defendants' answer; and further alleged that had he, plaintiff, been permitted to do his work as called for in his contracts without hindrance or molestation by defendants, he would have been able to make a profit upon said work, and to have carried the same forward to completion within the time specified in the contracts; further alleged that in the early part of 1922, defendants and their agent, Wells, who was a subcontractor, entered into a scheme or plan for relieving plaintiff of his contracts, and commenced a systematic block or hindrance to prevent plaintiff from getting money due him under his contract, and from keeping a sufficient number of men and trucks in order to discharge the work satisfactorily; that from the month of May to August, 1922, defendants held up money to plaintiff under his contracts, representing to plaintiff that they were unable to get their money from the state, when in truth and in fact, defendants had been overpaid by the state at that time, by reason of which plaintiff was unable to pay his men, many of whom withdrew from the job; that the said Wells attempted to take charge of a gravel pit from which plaintiff was obtaining his gravel; that truckmen refused to haul gravel for plaintiff at the instance and request of the said Wells, agent for defendants; that the said Wells told the truckmen that he was going to take over the job from plaintiff; that he would pay them more money; that they would never get their money if they worked for plaintiff; that defendants caused a suit to be filed against plaintiff by a party named Fry; that upon the filing of said suit they notified their agent, Wells, that any further payment for work would have to be made to the parties holding the claim upon orders obtained by said parties from plaintiff; that defendants, through their agent, Wells, conspired and colluded with one Fisher, assistant project engineer, whereby the said Fisher was to write letters complaining of the manner in which plaintiff was performing work.

The reply of the plaintiff was filed on February 19, 1924, and thereafter on October 27th, leave was granted the defendants to withdraw their answer and present a general demurrer to the petition of plaintiff upon the ground that it did not state facts sufficient to state a cause of action, which demurrer was overruled; thereafter, on September 8, 1925, the cause came on for trial, and after a jury was impaneled, the defendants interposed objection to the introduction of any evidence on behalf of plaintiff upon the ground that the petition of plaintiff did not state facts sufficient to constitute a cause of action against the defendants, whereupon the court permitted plaintiff to amend the third paragraph of his petition by inserting therein the words:

"and as shown by estimates submitted from time to time by the engineer in charge as shown by the final statement of said work and materials used therein as furnished by the defendants to this plaintiff"

—and the objection of plaintiff to the introduction of evidence was overruled, and the cause proceeded to trial, which resulted in a verdict in favor of the plaintiff for the sum of $7,666.44.

The plaintiff filed a special or limited motion for a new trial which related solely to an item and sum of $861.99, upon which amount the trial court had ruled and instructed that the plaintiff was not entitled to recover. The defendants filed their general motion for a new trial. Both motions were overruled, and the defendants bring the cause here for review, and file their petition in error, setting forth numerous grounds for reversal, some of which, however, are not presented or argued in briefs. The plaintiff has also filed herein his cross-petition in error covering the matter and sum upon which he filed a motion for a new trial.

The first assignments of error presented and argued in the brief of plaintiffs in error relate to the ruling and action of the trial court in overruling the demurrer of the defendants to plaintiff's petition, and in failing to sustain the objection of the defendants to the introduction of any evidence, it being contended that the petition of the plaintiff before and after the amendment by interlineation failed to state facts sufficient to constitute a cause of action. The defendants say the petition is insufficient because it does not allege that plaintiff ever did any work under the contract, fails to show that the amount sued for was based upon the engineer's estimates, or that the work had been accepted, or that the defendants had been paid by the state, and that it cannot be determined from the petition how much is due from the estimates. Further, that the petition does not show that defendants are indebted to plaintiff under the contract for work and labor. Defendants in their brief state:

"We find no authorities which hold that a cause of action may be based on the mere wrongful charging one's account with certain items, or for failing to give one proper credit."

The recent case of Amis v. Maney et al., 130 Okla. 216, 266 Pac. 757, is cited and relied upon by defendants in their supplemental brief. The demurrer to the petition in that case apparently was not a general demurrer, it being stated therein that

the demurrer was sustained only as to the first cause of action, the allegations of which are not set out in the opinion. We are of the opinion, however, that there is sufficient allegation in plaintiff's petition and in evidence, which was not objected to in the case at bar, to meet the defects pointed out in the Amis v. Maney Case, supra. We do not consider the other authorities cited in support of the argument by plaintiff in error applicable or controlling because of difference in the facts and record. Some of the defects claimed against the petition at bar are not warranted from an examination of the petition and the reasonable inference to be drawn therefrom.

"It is a well-established principle of pleading that there need be no direct allegation of fact if the same otherwise sufficiently appears, or of a fact which is necessarily implied from other averments in the petition." Revel et al. v. Pruitt, 42 Okla. 696, 142 Pac. 1019.

"The allegations of a petition, when challenged by a general demurrer, must be construed liberally in favor of the pleader, as such demurrer admits the truth of all allegations well pleaded, and if any facts are stated which entitle the pleader to any relief, the demurrer will be overruled." First National Bank of Ada et al. v. Cecelia Elam et al., 126 Okla. 93, 258 Pac. 892.

"Defendant's demurrer to plaintiff's petition, and defendant's objection to the introduction of evidence by plaintiff in support of his petition, on the ground that the petition does not state facts sufficient to authorize a recovery, for the purpose of consideration of such demurrer and objection, admit the truth of the allegations, and the logical and rational inferences to be drawn therefrom; and both are properly overruled where the allegations and logical and rational inferences to be drawn therefrom will authorize a recovery." St. Louis & S. F. R. R. Co. v. Bateman, 112 Okla. 86, 240 Pac. 110.

Section 294, C. O. S. 1921, provides:

"In the construction of any pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties."

Plaintiff's petition is subject to criticism in that it might be made more specific, definite, and certain, yet, taken as a whole, we conclude and hold that it is good as against a general demurrer, and therefore the first assignment of error presented in behalf of plaintiffs in error cannot be sustained.

The next several assignments of error argued and presented in the brief of plain-

tiffs in error relate to certain instructions given by the trial court. In order that an intelligent understanding of the questions raised under the assignments relating to the instructions may be had, we deem it necessary to state some of the undisputed facts as borne out by the record. The defendants entered into contracts with the state of Oklahoma for the construction of a graveled highway in Carter county, which contracts required the entire construction of the highway, including bridges; while the plaintiff contracted only to furnish and distribute the gravel to be laid on sections C and D. The plaintiff started on the work, and during the progress of the same, or before it was completed, the defendants, according to their pleading and evidence, being dissatisfied with the progress of the work, employed additional trucks and men, who, together with those employed by the plaintiff, completed the work. Some of the payments made to the parties employed by the defendants were made upon orders signed by the plaintiff, while a portion thereof, and certain moneys paid for material, were paid out by the defendants without any order or approval of the plaintiff. Some difficulty was experienced in obtaining sufficient gravel for the job, which necessitated changes in the pits or localities from which the gravel was obtained, and changes by supplemental agreement were made in the price to be paid for such gravel and its placement. After the completion of the work, the contractor submitted to the subcontractor, the plaintiff, two or three total or final estimates or statements of account showing the amount earned by the plaintiff, the amount paid to him, or on his behalf for labor and material on the work, and the balance ·due him. In each and all of the statements furnished by the defendants to plaintiff, including the statement attached to the answer of the defendants, the total amount shown to have been earned by the plaintiff on the work was $82,042.77. It is apparent from the answer and written statements of the defendants that they considered and computed all the gravel placed and work done under the contract between them and plaintiff, subcontractor, as having been done by plaintiff, whether, in fact, performed by men employed by plaintiff or defendants.

The fifth assignment of error presented in brief of plaintiffs in error is that the court erred in giving instruction No. 10:

"You will, therefore, gentlemen of the jury, in determining what is due from defendants to plaintiff, accept the amount of $82,429.89 as the amount earned by plaintiff."

The following is quoted from brief of plaintiffs in error, and refers to the instruction:

"The undisputed evidence is that the total amounts of the engineers estimates of the work done by both defendant in error and plaintiff in error was $82,042.77, so that it is very plain that the defendant in error in no event could have earned more than this sum, * * * and the court therefore had no authority to instruct the jury that the defendant in error had earned an amount in excess of the engineer's estimate, and for this reason the instruction is erroneous.

"This instruction is also erroneous because it invades the province of the jury. The amount which the defendant in error had earned was one of the disputed questions of fact. Under the facts pleaded there were really but two questions for the jury to determine: (a) The amount defendant in error had earned, and (b) the amount, if any, he had been paid."

We do not find the record in accord with the statement of defendants, plaintiffs in error, that the engineer's estimate showed the amount earned to be $82,042.77. The estimates of the engineer and the approved final statement as filed by the contractor with the state showed the total amount of gravel placed on the sections and the amounts earned by the contractor, but not the amount earned by the subcontractor. The subcontractor's pay was based upon a separate contract between him and the contractor. The dispute and instruction arose over the price to be paid upon a portion of the gravel furnished. As hereinbefore stated, the defendants, under their various statements, admitted that the plaintiff had earned $82,042.-77, while the plaintiff contends he was entitled to an additional sum of $1,249.11 made up to two items, one for $387.12 for hauling certain gravel on which he contends he was entitled to an additional sum of 26 cents per cubic yard on the price allowed, and for the further sum of $861.99, claimed to be due as an overhaul on certain gravel at 15 cents per cubic yard.

The trial court held that the issues as to whether plaintiff was entitled to the additional amounts claimed for gravel were questions of law rather than of fact, and were to be determined from an interpretation of the contracts as applied to the undisputed evidence. As to the first item of $387.12, the court held that the plaintiff was entitled to recover, and as to the other item, it was held plaintiff was not entitled to recover, so the effect of the instruction complained of was to add $387.12 to the amount which the defendants admitted the plaintiff had earned,

as shown by their answer and statements of account.

We think instruction No. 10 justified and correct in the light of the written admissions by defendants as to amount of gravel furnished and amount earned by plaintiff, and when considered in connection with instructions Nos. 8 and 9, which are next referred to.

Instruction No. 8, in which the court advised the jury that plaintiff was not entitled to recover the item or sum of $861.99, refers to an item or sum claimed to be due plaintiff under the contract for overhaul of gravel beyond the town of Lone Grove, and is the amount and item upon which the plaintiff, defendant in error here, has filed his cross-petition. We concur in the conclusion and holding of the trial court that the contract between the parties did not authorize or entitle plaintiff to an additional compensation or sum claimed as an overhaul, and such holding is justified by the record. The contractor did not receive any additional sum from the state for such overhaul, but, aside from such fact, we are of the opinion that plaintiff, under the terms of his contract with the defendants, was not entitled to any sum for the extra one-half mile claimed and referred to as an overhaul. Therefore, the cross-petition in error of plaintiff cannot be sustained.

Defendants objected to and claimed error in instruction No. 9, in which the court held and instructed that, under the contract and undisputed evidence, the plaintiff was entitled to recover the sum of $387.12. It appears the defendants made a deduction or figured 26 cents less per cubic yard on gravel hauled from the Bratcher gravel pit than from the Abshier & Zellner pit, upon the theory that such reduction was authorized under the provisions of section 5, supplemental agreement November 2, 1921, wherein the price of gravel from Abshier & Zellner pit was fixed at a certain price, and wherein it was provided that if the contractor should construct a road over which such gravel might be hauled, and thereby shorten the haul, then a reduction of 13 cents per cubic yard for each one-half mile saved in the hauling by the shorter route should be made in the stated price. The section of the contract relied upon by defendants does not, as we view it, apply to the haul from the Bratcher pit. It is not claimed that the defendants constructed any roadway to the Bratcher pit; on the contrary, it is claimed by the plaintiff that he was at considerable extra expense in obtaining gravel from the Bratcher pit, and

that when the Abshier & Zellner pit became exhausted, the defendants stated to him that they had no objection as to where he obtained the gravel so long as it did not cost them any more. Some statement or expression is made in the brief of defendants that they should not be required to pay for the labor and material a second time. We fail to see where they are required to pay the item a second time.

The amount of gravel in question was covered by the engineer's estimate, but the amount allowed by the defendants for the same was 26 cents per cubic yard less than plaintiff was entitled to under the contract and evidence, and we fail to see where there is any duplication of the item, or wherein it was ever paid out by defendants or received by plaintiff. We are of the opinion that the instruction was correct.

Defendants say the court erred in giving instruction No. 11, which is as follows:

"There remains then, gentlemen of the jury, for you to determine what amount has been paid the plaintiff by the defendants, and the difference between that amount and $82,429.89, the amount earned, will be the amount the plaintiff is entitled to recover, and should be the amount of your verdict.

"Plaintiff contends that there has been paid to him, or on his account, the sum of $74,763.55. This would leave due the plaintiff, under his contention, $7,666.34.

"Defendants contend that they have paid the plaintiff, or for his account, the sum of $79,555.89, leaving due the plaintiff the sum of $2,486.88, which they concede they owe to the plaintiff. The amount of the difference, between the parties contentions, $5,179.46, is made up of items Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, and also the sum of $600 paid to E. J. Wells for superintending the work, alleged to have been paid December 11, 1923, and shown on account introduced in evidence as exhibit 9. There is submitted for your consideration whether plaintiff, in addition to the $2,486.88. should recover from the defendants any thing on these various items, if so, how much."

The argument advanced against the instruction is that there was no evidence from which it might be determined what sum the defendant in error did earn; that the instruction is not supported by the evidence, that the instruction invades the province of the jury by fixing the amount earned by plaintiff. This objection is practically the same as that made and advanced against No. 10, wherein the court fixed and advised the jury of the amount earned by plaintiff.

The further objection to instruction No. 11 is that the same limits the jury solely to the consideration of items Nos. 1 to 13, which correspond to paragraphs 4 to 15 of the petition, it being the contention that the law did not authorize a recovery upon the items, that if any amount be recovered it must be for work and labor or for damages for breach of the contract. A similar argument and theory was advanced upon the question of the sufficiency of the petition. While there are expressions in the petition and in the instruction, when considered alone, which would make it appear that plaintiff sought to recover on the various items rather than for work and material due and owing under the contract, yet, when the petition and the instructions are considered as a whole, it will be seen and determined that, in their final analysis, the action was one to recover for labor and material due under the contract. The instruction embodied the correct measure and extent of plaintiff's recovery, although the forms of expression may not have been couched in terms frequently used in cases of this character because of the expressions and statements in the pleadings.

In the body of the opinion, in the case of Wiebener v. Peoples, 44 Okla. 32, 142 Pac. 1036, the court, after stating and referring to the statutory measure of damages allowable in a breach of a builders' contract, states the thought and rule applicable to the instruction in the instant case in the following language:

"* * * But the same measure may be embodied in different forms of expression or be accomplished by one or more rules adapted under the facts to correctly ascertain the amount which this statute declares to be the measure of damages, although unlike the statutory measure except in operative effect."

We fail to see wherein instruction No. 11 contains substantial, if any, error as against the defendants.

Error is also claimed in the giving of the twelfth instruction, in which the court advised the jury that, if they found from the evidence that the defendants charged to plaintiff's account any sum or item for which plaintiff was not obligated under the contract, then they should allow such amount to plaintiff. The same objection is advanced to this instruction as to No. 11, because it advised the jury that plaintiff might recover the amount charged to account of plaintiff, and that it is based upon an erroneous theory. What has heretofore been said upon this point regarding instruction No. 11 is applicable to the objection raised to No. 12.

Defendants also claim error in the giving of instruction No. 13, in which the court instructed that, if the jury found from the evidence that the defendants were acting within their rights as outlined, and placed additional force or equipment upon the work, that they would have the right to pay therefor the usual and reasonable price and charge the same to the plaintiff, although the plaintiff may never have authorized the employment of such trucks, material or labor or consented thereto. On the other hand, if they found from the evidence that the defendants did not, in good faith, and with reasonable cause become dissatisfied with the progress of the work by the plaintiff, but acted arbitrarily, then they could only charge to the plaintiff such amount for additional labor and material as he might have authorized, consented to and acquiesced in. Defendants first complain of that part of the instruction wherein the court instructed that defendants would be entitled to pay therefor the usual and reasonable price and charge the same to the plaintiff, it being contended that, under the contract, the defendants would be entitled to charge to the plaintiff the actual cost of such additional labor and material, and that it was error to limit the charge to the usual and reasonable price. Defendants evidently did not take the same view of the matter as they now advance when they prepared their answer in the case, because in their answer, in referring to the cost of the labor and material which they charged to plaintiff, they stated:

"The amount of said expenditure and charge was and is necessary, essential, reasonable, just and proper."

In the case of Schmidt Bros. Const. Co. v. Raymond Y. M. C. A. (Ia.) 163 N. W. 458, cited in the supplemental brief, in discussing the instruction complained of, such cited case in referring to such charges uses the expressions: "reasonable cost and fairly and reasonably necessary."

Further objection is made to the instruction, that part wherein it was stated, in effect, that it was necessary for the defendants to have placed the additional labor and material in good faith and with reasonable cause. It being contended that, under the contract and specifications, the plaintiff was bound by the decision of the engineer, and that, under the evidence in the case, the engineer was dissatisfied with the progress of the work. It is true there was some evidence in the record to the effect that the local or resident engineer was dissatisfied with the progress of the work, but there is also evidence to the effect that such delay

was not entirely attributable to the plaintiff, and that it might have been through the acts and fault of the defendants. There was sufficient evidence, as we view it, to justify submitting the question to the jury.

Error is claimed by defendants in the giving of instruction No. 15, on the ground that such instruction is not warranted by the pleadings or the evidence. The instruction, in effect, advises the jury that if one party to a contract so interferes with performance by the other party as to make performance impossible, such conduct constitutes a breach of the contract; that if the jury believed from the evidence that the defendants interfered with the performance of the work and plaintiff's duty under the contract, and that such interference so delayed plaintiff in the completion of the work as to make performance impossible, then and in that event the defendants would be deemed to have breached their contract and plaintiff entitled to recover such sum or sums as he would have earned under the terms of the contract as if he had proceeded with the work without hindrance. If it could be said such instruction was not within the pleadings or warranted by the evidence, still, we think the same, when considered with the other instruction, could not and did not mislead the jury or result in any prejudice to the defendant. Further error is claimed in the action of the court in permitting certain testimony on behalf of the plaintiff relative to the progress and condition of the work on sections A and B of the project. Under this objection, there is only set out in the brief of the defendants a copy of letter from the state engineer addressed to the defendants, a portion of which was admitted in evidence, which letter refers to receipt of letter from the defendants and their reference therein to the plaintiff, subcontractor, and states that the work in sections A and B of the project had been delayed to a greater extent than the work of Dugger and Fry. Reference is made in the brief to certain objections made to other testimony as shown in the case-made.

From an examination of the record, it appears the testimony and evidence objected to by defendants was admitted upon the theory that the same was competent and tended to show whether the defendants were acting in good faith in putting on additional labor and material in the graveling of sections C and D. The court instructed and advised the jury that, although they might find and believe from the evidence that at the time the defendants placed additional force on the work contracted to plaintiff,

the work on sections A and B was further behind than C and D, and that the engineer was complaining more of the slowness of the work on sections A and B than C and D, such facts would not in any way affect the right of the defendants to put additional force to work on sections C and D, provided that in so doing they, defendants, honestly and in good faith, were not satisfied with the progress of the work on sections C and D.

It does not appear that any reversible error was committed in the introduction of the evidence complained of.

"In a law action, where issues of fact are submitted to the jury under proper instructions and verdict returned, a judgment based thereon will not be disturbed where there is evidence in the record which reasonably tends to support the verdict of the jury." Keaton v. Taylor, 114 Okla. 167, 245 Pac. 56.

The evidence reasonably tends to support the verdict, and since we find no substantial or reversible error warranting a reversal of the judgment of the lower court, the same is affirmed.

REID, FOSTER, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

---

On Rehearing.

PER CURIAM. The plaintiffs in error in their petition for rehearing state that there are numerous misstatements of fact in the opinion that materially affect the conclusion of law thereon.

The first and second objections to the opinion should be considered together. They are:

"1. That the record does not disclose the amount of the engineer's estimate to be the sum of $82,042.77.

"2. That the pay of the defendant in error was not based on the estimates of the engineer, but on a separate contract between him and the plaintiffs in error."

We think the opinion clearly points out that the engineer's estimate did not show the amount of earnings between the contractor and the subcontractor for the reason that the state deals with the principal contractor only.

The third objection is to that portion of the opinion which states:

"The dispute and instruction arose over the price to be paid upon a portion of the gravel furnished."

An examination of the instructions shows

that instruction No. 9 had reference to a contention between the parties relating to an item which had been charged against the plaintiff amounting to $387.12, on account of deducting 26 cents per cubic yard for gravel.

The court's instruction No. 10 is to be read and construed with instruction No. 9, and it is very clear that instruction No. 9 related solely to the controversy on the deduction made by the defendants on the gravel furnished by plaintiff.

There is no merit in plaintiff in error's objection No. 3.

The fourth objection to the opinion is that the plaintiffs in error had admitted that defendant in error had earned the sum of $82,042.77.

The defendants in their answer to the petition of the plaintiff state in part:

"A verified, itemized, true and correct statement of account of the labor and work performed and the materials furnished by the plaintiff, and the sums and amounts thereby earned by the plaintiff, and also of the sum and amounts paid to and charged against the plaintiff, being hereto attached, marked Exhibit No. 2 and by this reference made a part hereof." C.-M. 41.

The exhibit above referred to is to be found on pages 45-48, C.-M., and shows that there is credited to the plaintiff the sum of $82,042.77, and there is debited against said credit certain charges which constituted the issues in the court below.

At pages 145, 150, 191, 197, C.-M., are statements from the defendants to the plaintiff showing credits in favor of the plaintiff in the sum of $82,042.77.

The answer of the defendants below and the statements furnished the plaintiff by the defendants all show that the plaintiff was entitled to a credit of $82,042.77, and the controversy below was on the proposition whether or not certain charges made against the plaintiff's account were justified and legal.

A careful recheck of the record with the allegations set forth in plaintiff in error's petition for rehearing shows that such allegations are wholly unsupported by the record and that they are entirely without merit.